UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH ROBINSON and WILLIE KIMBROUGH, | |
| Plaintiffs, | No. 1:24-CV-05285 |
| v. | Judge Edmond E. Chang |
| CONOPCO, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Keith Robinson and Willie Kimbrough, proceeding pro se, bring this lawsuit against Conopco, Inc., alleging that the company's "No Alcohol"-labeled deodorant is deceptive in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* R. 1, Compl.[1] Conopco moves to dismiss the complaint for failure to adequately state a claim. R. 29, Def.'s Mot. As explained in this opinion, Conopco's motion is granted in limited part and denied in large part.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in the plaintiffs' complaint and draws all reasonable inferences in the Plaintiffs' favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007)).

---

[1] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Conopco sells cosmetic products, including the Dove Men+Care deodorant at issue in this case. R. 23, 11/08/2024 Status Report; Def.'s Mot. at 4.[2] In February 2024, the Plaintiffs each purchased one stick of Dove Men+Care deodorant from Walmart. Compl. at 1; *id.*, Exh. B. Relying on the product's "NO ALCOHOL" label, the Plaintiffs paid $2.69 per stick. *Id.* at 1–2. The label looked like this, with the "NO ALCOHOL" text toward the bottom of the stick:



---

[2]Unless otherwise noted, citations are to the PDF page numbers of the filing.

2

*Id.*, Exh. B. According to the Plaintiffs, shortly after using the deodorant, they suffered an allergic reaction and broke out in a rash, so they investigated the deodorant's back-label ingredient list and discovered that the product contained benzyl alcohol. *Id.* at 2.

The Plaintiffs filed a proposed class-action lawsuit against Conopco under the Illinois Consumer Fraud and Deceptive Business Practices Act, seeking compensatory damages for injuries suffered because of the allegedly deceptive label, as well as punitive damages and injunctive relief. *See generally* Compl. But because the Plaintiffs are neither represented by counsel nor themselves licensed attorneys, they cannot represent a class, 28 U.S.C. § 1654; *Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001), so the Court struck the class-action allegations. R. 8, 07/15/2024 Minute Entry. Robinson and Kimbrough have maintained their individual claims under the Fraud Act.

Conopco filed a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); Def.'s Mot. Conopco advances three separate and independent arguments: the Fraud Act contains an applicable exemption from liability; the Plaintiffs did not adequately plead Conopco's intent to deceive; and the Plaintiffs' claims otherwise fail on the merits. Def.'s Mot. at 7–12. Conopco also argues that the Plaintiffs have failed to state plausible claims for punitive damages or injunctive relief. *Id.* at 12–14.

3

## II. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94. A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).[3] These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the Illinois

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

Consumer Fraud and Deceptive Business Practices Act. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Thus, Rule 9(b) requires that the Plaintiffs' complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, their complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli*, 631 F.3d at 441–42 (cleaned up).

### III. Analysis

The Illinois Consumer Fraud and Deceptive Business Practices Act is designed "to protect consumers from unfair methods of competition and other unfair and deceptive business practices." *Batson v. Live Nation Ent., Inc.*, 746 F.3d 827, 830 (7th Cir. 2014) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). "A plaintiff is entitled to recover under [the Fraud Act] when there is unfair or deceptive conduct." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (citing *Robinson*, 775 N.E.2d at 960). The Plaintiffs allege the deodorant was deceptively labeled, but they do not allege Conopco engaged in unfair practices. Compl. at 4.

### A. Subject Matter Jurisdiction

Before resolving the parties' arguments on Conopco's motion to dismiss, the Court (as always) checks for federal subject matter jurisdiction. Federal courts cannot proceed on issues over which they have no jurisdiction, so the Court has a duty to "police subject matter jurisdiction *sua sponte*." *Hay v. Ind. State Bd. of Tax Comm'rs*,

312 F.3d 876, 879 (7th Cir. 2002). Although it appears that the parties are completely diverse in citizenship,[4] it is less clear whether the amount in controversy exceeds $75,000, as required for diversity jurisdiction under 28 U.S.C. § 1332(a). If the amount in controversy is uncontested—as it is here—the Court will accept the plaintiffs' good-faith allegation of the amount in controversy unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). The Court concludes that it is legally possible for the Plaintiffs to recover more than $75,000, so the jurisdictional-amount requirement has been satisfied.

The Illinois Consumer Fraud and Deceptive Business Practices Act provides that a person bringing an action must "suffer[] actual damage" before a court "in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a(a). Courts have interpreted the "actual damage" requirement to center on "actual pecuniary loss." *E.g.*, *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)). For a case brought by an individual consumer, "actual loss may occur if the seller's deception deprives the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the property." *Id.* (cleaned up). And under Illinois law, a monetary loss is the gateway to *non*economic damages: if a plaintiff

---

[4]The Plaintiffs are citizens of Illinois, R. 6, Pls.' Jurisdictional Memo. at 1, and Conopco is a New York corporation with its principal place of business in New Jersey, R. 25, Def.'s Jurisdictional Memo.

"suffer[s] an economic loss, noneconomic injuries are compensable," *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 830 (7th Cir. 2018) (citing *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053–54 (Ill. App. Ct. 2009)), as are punitive damages, *United States ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 804 F.3d 889, 892 (7th Cir. 2015).

Although the Plaintiffs each paid only $2.69 for a stick of deodorant, they allege an array of damages—including economic damages that then trigger noneconomic damages. First, they argue that they were deprived of the benefit of their bargain, Compl. at 2, so they plausibly allege the predicate requirement that they have suffered "actual damage" within the statute's meaning. 815 ILCS 505/10a(a). Second, they seek monetary damages from both categories permitted by 505/10a(a): (1) "actual economic damages" from the time they allegedly could not work because of their rashes, R. 34, Pl.'s Resp. at 7; and (2) "any other relief which the court deems proper" for the pain and suffering from their injuries and punitive damages, Compl. at 5. Although the Plaintiffs do not specify the quantity of each bucket of monetary damages, it is not legally certain that the sum falls at or below $75,000. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511–13 (7th Cir. 2006) (noting combination of compensatory and punitive damages, disgorgement, and attorneys' fees plausibly put more than $75,000 at stake); *cf. Gavin v. AT & T Corp.*, 464 F.3d 634, 641 (7th Cir. 2006) (permitting higher multiple of punitive damages compared to compensatory damages where latter figure "is so small that it would be unlikely to induce a suit even of compelling legal merit").

### B. The Fraud Act's Safe-Harbor Provision

Conopco argues for dismissal because its compliance with labeling guidance issued by the U.S. Food and Drug Administration renders it immune from liability under the Fraud Act's safe-harbor provision. Def.'s Mot. at 7–9; *see* 815 ILCS 505/10b(1). Although the parties disagree whether an affirmative defense resting on the safe-harbor provision is properly asserted at the pleading stage, Pls.' Resp. at 3–5; R. 35, Def.'s Reply at 1–5, the Court need not resolve that procedural question. Even if Conopco can assert the safe harbor now, the safe-harbor provision does not warrant dismissal at this stage of the case.

The plain text of the safe-harbor provision makes clear that is inapplicable to the Plaintiffs' allegations. The Fraud Act exempts from liability actions "specifically authorized by laws administered by any regulatory body … of this State or the United States," but that provision sets forth a key exception: "the manufacture, distribution, or sale of a product or service that causes or contributes to *bodily injury* … is not an action or transaction 'specifically authorized.'" 815 ILCS 505/10b(1) (emphasis added). The Plaintiffs in this case allege that they suffered rashes after using Conopco's product, Compl. at 2; *id.*, Exh. A, and that suffices to allege a "bodily injury" that places this case—at least at the pleading stage—outside the reach of the safe-harbor provision. The Fraud Act does not explicitly define "bodily injury," but Illinois courts have interpreted the term in a variety of contexts, and the Plaintiffs' allegation of the body rashes satisfies the definition. *See, e.g.*, *People v. Mays*, 437 N.E.2d 633, 635–36 (Ill. 1982) (noting that "bodily harm" for criminal battery entails "some sort

8

of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent"); *Permanent Constr. Co. v. Indus. Comm'n*, 43 N.E.2d 557, 559 (Ill. 1942) (defining "bodily injury" to encompass typhoid fever which may result in "physical injury") (citing *Aetna Life Ins. Co. v. Portland Gas & Coke Co.*, 229 F. 552, 553 (9th Cir. 1916) (interpreting "bodily injury" in insurance policy)); *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150, 161 (Ill. 1987) (interpreting insurance policy and declaring that "bodily injury" takes place at time of exposure even without immediately visible symptoms).

It is true that the Plaintiffs' response brief does not explicitly advance the bodily-injury exception. *See generally* Pls.' Resp. The Court is mindful, however, of the need to construe pro se filings "liberally." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Here, the Plaintiffs do allege that they suffered rashes, for which they even provided photographs. Compl., Exh. A. The Fraud Act's safe-harbor provision and corresponding bodily-injury exception are found right in the same subsection and, indeed, in the same sentence. *See* 815 ILCS 505/10b(1). And in any event, the Plaintiffs would have had an opportunity to file an amended complaint, *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (instructing that if an original complaint is dismissed, then generally the plaintiff should be given an opportunity to amend), and the Plaintiffs could easily have alleged their way around the safe-harbor provision given the rashes that they allegedly suffered. The Court rejects Conopco's invocation of the safe-harbor provision because the Plaintiffs' allegations fall within the bodily-injury exception, at least at the pleading stage. If

discovery somehow dispositively shows that the Plaintiffs did not suffer bodily injury, then Conopco may seek summary judgment on this issue after discovery is done.

### C. Rule 9(b) Heightened Pleading

Conopco also argues that the complaint should be dismissed because the Plaintiffs failed to adequately plead that Conopco had an intent to deceive or an intent for the Plaintiffs to rely on the alleged deception as required by Rule 9(b) of the Federal Rules of Civil Procedure. Def.'s Mot. at 12; Def.'s Reply at 7–8. The Court disagrees.

It is true that if a complaint alleges deceptive practices under the Fraud Act that amount to fraud, then "Rule 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). To do so, the complaint must specify the "who, what, when, where, and how of the alleged fraud." *Id.* (cleaned up). A plaintiff need not, however, allege reliance to adequately plead statutory consumer fraud under Illinois law. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). It is sufficient if a plaintiff's purchase simply happens after the allegedly fraudulent statement is made and if the complaint identifies no intervening cause. *Id.* at 595.

Here, the Plaintiffs have adequately alleged fraud under Civil Rule 9(b). Plaintiffs allegedly saw the "NO ALCOHOL" label (how and what) when they bought Conopco's (who) deodorant at Walmart (where) on February 1, 2024 (when). Compl. at 1. Because the deodorant did contain benzyl alcohol, the Plaintiffs allege that it was worth less than what they paid, and they suffered financial and bodily harm. *Id.* at 2. Given the prominence of the "NO ALCOHOL" label, it would be odd indeed if

the Conopco decisionmakers who put those words on the front of the product did not intend for consumers to rely on the label. These are enough facts to satisfy Civil Rule 9(b), and discovery will supply the facts that prove or disprove the elements of fraud.

### D. "NO ALCOHOL" Label and the Reasonable Consumer

Conopco next argues that its deodorant packaging is not deceptive because it would not mislead a reasonable consumer. Def.'s Mot. at 9–11. The Plaintiffs disagree, contending instead that the deodorant's "NO ALCOHOL" label on the front was unambiguous and that any clarification in its back-label ingredients list was insufficient. Pls.' Resp. at 5–7. Giving the Plaintiffs the benefit of reasonable inferences, in the context of a low-price item like the deodorant at issue in this case, the Plaintiffs have plausibly alleged that a reasonable consumer took the "NO ALCOHOL" label at face value.

Conopco first contends that "alcohol" has a specific meaning—as is defined by the U. S. Food and Drug Administration and by a cited dictionary—and it refers only to *ethyl* alcohol. Def.'s Mot. at 10. But consumers cannot be expected to shop with a dictionary. Indeed, in some ways this case is the opposite of those cases in which a deceptive-label case is dismissed because it is the *consumer* that pours a specific, non-plain-English definition into a particular word found on a label. *See, e.g.*, *Lederman v. Hershey Co.*, 2022 WL 3573034, at *3–4 (N.D. Ill. Aug. 19, 2022) (dismissing case about "fudge" sauce because reasonable consumer does not define fudge "according to classic recipes created by experts"); *Troutt v. Mondelez Glob. LLC*, 637 F. Supp. 3d 606, 611, 614 (S.D. Ill. 2022) (dismissing case about "shortbread" cookies because

11

reasonable consumer lacked specialized knowledge of shortbread ingredients). Here, at least at the pleading stage, it is Conopco that assigns a non-plain-English definition to "alcohol."

Alternatively, Conopco argues that labels must be read within the whole context of their products. Def.'s Mot. at 9–11. That is right—as far as it goes. Courts have concluded that context clues can invalidate a consumer's deception claim, but these context clues rely on what is obvious to a reasonable consumer at first glance. *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) (dismissing case about lumber sizes because "the lumber's width and height are right there for the measuring"); *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *1–3 (N.D. Ill. Oct. 14, 2016) (dismissing case about iced coffee because no reasonable consumer would expect 24-ounce cup of iced coffee to fit 24 ounces of liquid "*plus* ice"). What is obvious to a reasonable consumer at first glance does not require a searching inquiry: "[c]onsumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476–77 (7th Cir. 2020).

In this case, the deodorant's front label says in capital letters, "NO ALCOHOL." Compl., Exh. B. Based on this unqualified representation, the Plaintiffs have adequately alleged at the pleading stage that average consumers buying a $2.69 stick of deodorant would not investigate the back label to discover benzyl alcohol among

12

the ingredients after such an explicit assurance on the front. The Plaintiffs thus have plausibly alleged that a reasonable consumer could have been deceived.

### E. Punitive Damages

Conopco argues that the Plaintiffs' request for punitive damages should be dismissed because the allegations in their complaint could not support such an award. Def.'s Mot. at 12–13. According to Conopco, a plaintiff must allege facts that suggest "egregious behavior" to merit punitive damages on a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. *Id.* at 13. The Plaintiffs respond in turn that fraud can suffice. Pls.' Resp. at 7. At this early stage, the Plaintiffs' allegations state a plausible claim for punitive damages.

"Under Illinois law, punitive damages may be awarded only if 'the defendant's tortious conduct evinces a high degree of moral culpability.'" *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1082 (7th Cir. 2019) (quoting *Slovinski v. Elliot*, 927 N.E.2d 1221, 1225 (Ill. 2010)). A plaintiff can show that level of culpability "when the tort is committed with *fraud*, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Id.* (cleaned up) (emphasis added). A trier of fact later determines whether punitive damages are actually justified. *Slovinski*, 927 N.E.2d at 1225. As discussed earlier, the Plaintiffs have plausibly alleged fraud, so they likewise have plausibly stated a claim for punitive damages. *See also Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 710–11 (N.D. Ill. 2020) ("A motion to dismiss

is not the right time to decide whether punitive damages are appropriate."). Conopco's motion to dismiss the Plaintiffs' request for punitive damages is thus denied.

### F. Injunctive Relief

Finally, Conopco argues that the Plaintiffs lack standing to seek injunctive relief. Def.'s Mot. at 13–14. The Plaintiffs in turn respond that they have alleged injury in fact to satisfy the Article III requirement of standing. Pls.' Resp. at 2–3. But the Plaintiffs fail to allege anything more than their past injury, so this Court agrees with Conopco and dismisses the request for injunctive relief. To have standing to seek injunctive relief, the Plaintiffs must allege a plausible claim that they face "a real and immediate threat of *future* injury." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (cleaned up) (emphasis added). In consumer-protection cases, that kind of future injury typically is implausible because a consumer who is aware of allegedly deceptive sales practices is unlikely to be harmed in the future. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014). So the request for injunctive relief is dismissed.

### IV. Conclusion

Conopco's motion to dismiss, R. 29, is granted only to the extent that the request for injunctive relief is dismissed. All of the other claims survive the motion to dismiss, so the motion is denied in large part. With this decision in place, Conopco must answer the complaint by October 10, 2025. The parties shall restart settlement negotiations and confer on a discovery schedule. The parties also shall file a joint

status report proposing a discovery schedule on October 17, 2025, and reporting on the settlement negotiations.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2025